UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

MDM OF LAKELAND, PA
d/b/a Highlands Dental
d/b/a All About Teeth

Case No. 8:14-bk-1546-CPM
Chapter 11

      Debtor.

_____/

## DISCLOSURE STATEMENT

### ARTICLE I
### INTRODUCTION

MDM OF LAKELAND, PA d/b/a Highlands Dental, d/b/a All About Teeth, the Debtor in the above styled Chapter 11 case, hereby provides this Disclosure Statement ("Disclosure Statement") to all of its known creditors in order to fully disclose that information deemed by the Debtor to be material, important, and necessary for its creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the Debtor's Chapter 11 Plan (hereafter the "Plan").

The United States Bankruptcy Code provides, as a general rule, that in order for a Chapter 11 Plan to be accepted, each class of the claims must accept the Plan. A class of creditors whose rights are impaired and altered under the Plan are deemed to have accepted the Plan if two-thirds (2/3) in dollar amounts and one-half (1/2) in number of those creditors in that class holding allowed claims and who file a ballot vote for the Plan. A class of claims which is not impaired under the Plan is deemed to have accepted the Plan and need not vote.

### Cramdown/Absolute Priority Rule/New Value Exception

In the event the Plan is not accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the creditors voting in any impaired class, the Debtor, under Section 1129(b) of the Bankruptcy Code, may request the Court to confirm the Plan anyway. The Court in such a case will confirm the Plan if all requirements for confirmation set forth in the Bankruptcy Code, except acceptance by one or more classes of creditors, are met and the Court finds the Plan to be "fair and equitable" to the non-accepting class(es). This is commonly called a "cramdown." In the event the Debtor is unable to obtain the vote of its unsecured creditor class, the Debtor may be required to overcome an objection based on the "absolute priority rule." The absolute priority rule generally provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property under a plan. If there is a "cramdown," the equity owners of the Debtor may be required to have an auction of their equity interest in the Debtor or they would have to contribute "new value" (purchase their equity for an amount the Court determines is sufficient). Any purchaser of the Debtor's equity interest would be bound to comply with the confirmed Plan as the equity owner and would be subject to comply with Florida law, including but not limited to the fiduciary duty owed to creditors by the equity owner of the Debtor. Failure to comply with the terms of the Plan as confirmed by the Court or any effort by a purchaser of the Debtor's equity interest to advance its equity interest over the interest of the Debtor's creditors would likely constitute a breach of fiduciary duty. If the Plan is not accepted by all classes, the Debtor may be liquidated under Chapter 7 of the Bankruptcy Code. In that event, the Debtor's assets would be liquidated and distributed to the creditors after the payment of all costs of administration and the payment of priority claims.

The cost of distributing the Plan and this Disclosure Statement, as well as the costs, if any, of soliciting acceptances, will be borne by the Debtor as an Administrative Expense. In addition, the Debtor has retained the services of the law firm of Johnson Pope Bokor Ruppel & Burns, LLP, 403 East Madison Street, Suite 400, Tampa, Florida 33602, in connection with the preparation of the Plan. The payment of fees, however, is contingent upon approval by the Bankruptcy Court after notice is given to all creditors and other interested parties.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS, VALUE OF PROPERTY, OR THE VALUE OF ANY PROMISSORY NOTES, IF ANY, TO BE ISSUED UNDER THE PLAN) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR ACTION AS MAY BE DEEMED APPROPRIATE.

THE DEBTOR'S PLAN, IF CONFIRMED, WILL BE A LEGALLY BINDING DOCUMENT. CREDITORS AND PARTIES IN INTEREST SHOULD CONSULT WITH COUNSEL TO DETERMINE WHAT EFFECT, IF ANY, THE DEBTOR'S PLAN WILL HAVE ON THEM.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT. THE RECORDS KEPT BY THE DEBTOR ARE DEPENDENT UPON

ACCOUNTING PERFORMED BY OTHERS.  THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR'S PRINCIPALS, HOWEVER, FOR THE FOREGOING REASONS, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN TO BE WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

**ARTICLE II**
**BACKGROUND OF DEBTOR**

The Debtor is in the business of owning and operating a general dental practice as a professional association doing business as Highlands Dental and All About Teeth.  The Debtor incorporated as a Florida corporation on March 12, 2010 by Jeffrey Martin, DMD, the Debtor's president.  The Debtor's business operations began in April, 2010.

The Debtor's principal office is located at 2153 East County Road 540A, Lakeland, Florida, which property is leased by the Debtor from Publix Super Markets, Inc.

The Debtor began operating its dental practice on or about April, 2010 when it purchased a pre-existing dental practice in Lakeland, Florida ("Lakeland Practice") from Smile Divine, LLC.

The existing practice maintained approximately $100,000 in monthly revenues at the time the Debtor purchased the practice.  Under the management and direction of Dr. Jeffrey A. Martin, DMD, the Lakeland Practice grew to a volume of $150,000.00 a month.

On or around September, 2011, the Debtor purchased two additional existing practices in Clearwater, Florida ("Clearwater Practice") from Frederick E. Hosley, DDS, PA; Frederick E. Hosley (collectively, "Hosley"); Harvey L. Kerstein, DDS, PA and Harvey L. Kerstein

4

(collectively, "Kerstein"). In order to fund the purchase of the Clearwater Practice, the Debtor acquired two (2) loans from Bank United, N.A. ("Bank United"). The Debtor and Bank United entered into Promissory Notes and Business Loan Agreements whereby Bank United agreed to loan the Debtor $900,000 under one note and another $660,000 under the second note (collectively, the "Bank United Notes"). The Bank United Notes are secured by essentially all of the assets of the Debtor. Concurrently, the Debtor entered into signed a lease with the Hosley and Kerstein.

Immediately following the purchase of the Clearwater Practice, patient requests for medical records began to be made. The Clearwater Practice suffered from loss of patient retention and lack of employee support from the previous practices. Dr. Martin attempted to stem the loss of patients, but after six (6) months, the Lakeland Practice began to decline. Despite having an agreement with one of the Clearwater Practice's dentists to remain on staff for a year, the dentist terminated his employment early. The Debtor filed a lawsuit against Hosley and Kerstein for failing to provide the promised "goodwill" from the 2011 purchase. A second lawsuit was filed against the business broker, David Griggs, D.D.S., Inc. and W. David Griggs, D.D.S., individually. Ultimately, the broker suit which was not pursued was dismissed with prejudice. Dr. Martin was advised by his counsel at the time to cease payments of rent to Hosley and Kerstein. As his business continued to decline, Dr. Martin made the decision not to pursue mandatory arbitration and eventually agreed to allow Hosley and Kerstein to prevail. Ultimately, as a result of the arbitration, final judgments confirming arbitration awards were entered against the Debtor and Dr. Martin and in favor of Hosley in the amount of approximately $267,460.00 and Kerstein in the amount of approximately $266,874.00.

5

By the end of 2013, the Debtor ceased operations in the Clearwater Practice in order to stem future losses from affecting the Lakeland Practice. Total revenues from 2012 to 2013 declined by over 20%. Throughout 2013, Dr. Martin was unable to fully devote attention to the Lakeland Practice due to his increased involvement in the legal cases that arose from the closing of the Clearwater Practice as well as the overall management of the Lakeland Practice. Moreover all advertising was suspended and revenue continued to decline. Consequently, the diminished patient attention resulted in too great a loss in business to overcome the continuing losses associated from the Clearwater purchase.

As part of the declining revenues, the Debtor was unable to service its debt to Bank United. On February 4, 2014 the Debtor was served with a lawsuit filed by Bank United with respect to the Bank United Notes. On February 11, 2014 the Debtor was served with an eviction notice. Given the lawsuit, the eviction and the Debtor's need to reorganize, the Debtor saw no alternative but to file a Chapter 11 bankruptcy petition.

On February 12, 2014 the Debtor filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code. During the pendency of the case, the Debtor was able to come to an agreement with its largest creditor, Bank United. The terms of the agreement with Bank United are described below with respect to the Class 1 Claim. Through the Debtor's Plan, the Debtor anticipates restructuring its debt and emerging from Chapter 11 successfully.

### ARTICLE III
### PREPETITION FINANCIAL PERFORMANCE

As mentioned in Article II, the Debtor began operating its dental practice on or about April, 2010 when it purchased a pre-existing dental practice in Lakeland, Florida ("Lakeland Practice") from Smile Divine, LLC.

By the end of 2013, the Debtor ceased operations in the Clearwater Practice in order to stem future losses from affecting the Lakeland Practice. As a result, total revenues from 2012 to 2013 declined by over 20%. Throughout 2013, Dr. Martin was unable to fully devote attention to the Lakeland Practice due to his increased involvement in the legal cases that arose from the closing of the Clearwater Practice as well as the overall management of the Lakeland Practice. The decline in Debtor's revenue in 2013 is evident when the Debtor's 2012 annual gross income is considered.

The Debtor's annual gross income in 2012 was approximately $1,759,453.00 and in 2013 it was approximately $1,359,120.00. Debtor's gross revenue for the year to date ending on February 12, 2014 (the Petition Date) was $50,451.03.

### ARTICLE IV
### AVOIDANCE ACTIONS/LITIGATION

The Debtor has not initiated any preference, fraudulent transfer or other actions under Subchapter III of Chapter 5 of the Bankruptcy Code. The Debtor has analyzed the possibility of avoiding and recovering, as Debtor in possession, preferential or fraudulent transfers pursuant to Sections 544, 547, 548, and 550 of the Bankruptcy Code and applicable nonbankruptcy law. The Debtor is unaware of any preferential or fraudulent transfers either intentional or constructive, subject to avoidance and recovery by it as a Debtor in possession.

On May 22, 2014 the Debtor filed its Motion to Assume the Non-Residential Real Property Lease and Exercise Option to Renew with Publix Supermarkets, Inc. (Doc. No. 64).

The Debtor operates its business at the shopping center commonly known as Publix in the Highlands, 2153 East County Road 540a, Lakeland, Florida 33813 ("Premises"). Smile Divine, LLC ("Smile"), and the landlord, Publix Super Markets, Inc. ("Publix") entered into a lease for the Premises on March 6, 2009 ("Lease"). Smile, the Debtor and Publix entered into an

7

Assignment of the Lease dated April 29, 2010 ("Assignment").    The Lease is executory as its

initial term expires on September 30, 2015.  The Debtor seeks to assume the Lease with Publix

and will furnish adequate protection by making timely post-petition rents or allow an appropriate

administrative expense claim or a combination thereof.

**ARTICLE V**
**CLASSIFICATION AND TREATMENT OF**
**CLAIMS AND INTERESTS**

5.1    Classification of Claims and Interests.

(a)    Classification.

(1)    General.  Article II of the Plan sets forth the designation of Classes of

Claims and Interests.  A Claim or Interest is classified in a particular Class only to the

extent that the Claim or Interest qualifies within the description of the Class and is

classified in a different Class to the extent the Claim or Interest qualifies within the

description of that different Class.

(2)    Unclassified Claims.  In accordance with §1123(a) of the Bankruptcy

Code a Plan must place into classes all of the claims against an interest in the Debtor, the

only exceptions being Administrative Claims, Involuntary Gap Claims (if any) and

Priority Tax Claims, none of which vote on the Plan. These claims, which are excluded

from classification, are treated elsewhere in Chapter 11.

5.2    Classes.  For the purposes of the Plan, the Claims against, or Interests in, the

Debtor are grouped in the following Classes in accordance with §1122(a) of the Bankruptcy

Code:

1.    Class 1 (Impaired) consists of the secured claim of Bank United in

connection of two promissory notes and business loan agreements, one in the amount of

$798,023.45 ("Loan #93311") and the second in the amount of $584,444.37 (Loan

8

#93310") for a total indebtedness of $1,382,467.82. Bank United's lien appears to encumber all of the Debtor's personal property, including, but not limited to, the Debtor's, accounts receivable, cash, inventory, furniture, fixtures, equipment ("Personal Property"). Please see treatment of the Class 1 claim in Article II, § 2.1 of the Debtor's Chapter 11 Plan of Reorganization.

2.      Class 2 (Impaired) consists of the secured claim of Pinellas County Tax Collector who is owed a total of approximately $3,222.03 for 2011, 2012 and 2013 tangible taxes. Please see treatment of the Class 2 claim in Article II, § 2.2 of the Debtor's Chapter 11 Plan of Reorganization.

3.      Class 3 (Impaired) consists of the priority unsecured claim of Internal Revenue Service ("IRS")  in the amount of $4,601.20 for FICA taxes for tax period September 30, 2013 and the general unsecured claim in the amount of 795.59. Please see treatment of the Class 3 claim in Article II, § 2.3 of the Debtor's Chapter 11 Plan of Reorganization.

4.      Class 4 (Impaired) consists of a potential priority unsecured claim of Florida Department of Revenue ("FDOR"). The Debtor does not believe that it will owe the FDOR any amounts, but in the event that the FDOR timely files a proof of claim and that claim is an allowed claim, the Debtor will pay the allowed claim. Please see treatment of the Class 4 claim in Article II, § 2.4 of the Debtor's Chapter 11 Plan of Reorganization.

5.      Class 5 (Impaired) consists of the claims of the General Unsecured Creditors. The Debtor estimates that the total amount due to the claims of Class 5 is approximately $1,652,285.43, which amount does not include disputed claims in which

9

no proof of claim was filed with the Court and does not include the insider claim of Jeffrey A. Martin in the amount of $81,801.86. The insider claims will be subordinated to the allowed claims of all unsecured creditors. Please see treatment of the Class 5 claim in Article II, § 2.5 of the Debtor's Chapter 11 Plan of Reorganization.

6.   Class 6 (Impaired) consist of the equity interests of the Debtor's owner, Jeffrey A. Martin, DMD. On May 1, 2014 Dr. Jeffrey Martin filed a Chapter 7 petition, Case Number 8:14-bk-05057-CPM. The Chapter 7 case is pending before the Honorable Catherine Peek McEwen and Traci K. Stevenson is the Chapter 7 Trustee. Dr. Martin is represented by attorney, Allan C. Watkins. On or about May 28, 2014 Dr. Martin and his Chapter 7 Trustee entered into an agreement whereby Dr. Martin will buy back the non-exempt portion of his equity in the Debtor. It is anticipated that the sale of the Debtor's equity to Dr. Martin will be final on or about June 18, 2014. Please see treatment of the Class 6 claim in Article II, § 2.6 of the Debtor's Chapter 11 Plan of Reorganization.

5.3   Classes of Claims Not Impaired by the Plan. Administrative claims are not impaired by the Plan. Under §1126(f) of the Bankruptcy Code, the holders of those Claims are presumed conclusively to have voted to accept the Plan and, therefore, the votes of those holders shall not be solicited.

5.4   Classes of Claims Impaired by the Plan. Claims in Classes 1 through 6 are impaired under the Plan.

5.5   Treatment of Allowed Claims and Allowed Interests.

(a)   General. The Allowed Claims and Allowed Interests, as classified in Article II of the Plan, shall be satisfied in the manner set forth in Article II of the Plan. The treatment of, and the consideration to be received by, holders of Allowed Claims and holders of Allowed Interests

pursuant to the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims and Allowed Interests.

(b)     <u>Administrative Claims</u>.  Administrative Claims shall be paid in full in cash at confirmation.  However, Debtor's counsel, Johnson Pope Bokor Ruppel & Burns, LLC ("JP") and Debtor's financial advisor, Renaissance Consulting and Development, LLC ("RENCD") have agreed to accept payments over time consistent with the Plan in order to facilitate the Debtor's confirmation effort.  Therefore, JP and RENCD shall be paid the Allowed Amount of such holder's Allowed Administrative Claim, in cash over twenty-four (24) months, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, upon receipt of the twenty-fourth (24th) and final payment; provided, however, that Allowed Administrative Claims representing (a) post-petition liabilities incurred in the ordinary course of business by the Debtor and (b) post-petition contractual liabilities arising under loans or advances to the Debtor, whether or not incurred in the ordinary course of business, shall be paid by the Debtor in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto.

It is estimated that the estimated administrative fees and costs shall be approximately $50,000.00 (after payment of any interim fees), which the Debtor shall pay in twenty-four (24) equal monthly installments of approximately $2,083.34 per month with the first payment to begin on the Effective Date of the Plan.

(c)     <u>Priority Tax Claims--Other than property</u>.  Each holder of an Allowed Priority Claim (except any such holder that agrees to different treatment) shall receive the Allowed Amount of such holder's Allowed Priority Claim, in Cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, on the Effective Date. The obligations

11

under this Section with respect of any Allowed Priority Claim that is secured by a valid, perfected and enforceable Lien shall be collateralized by a continuation of the Lien underlying such Claim and such obligation shall be and become due and payable upon the sale or other disposition of the collateral therefore. This includes any sales tax claims. Except as provided for herein, the Debtor does not believe any amounts are owed.

### ARTICLE VI
### TREATMENT OF EXECUTORY CONTRACTS AND
### UNEXPIRED LEASES AND RELEASE AND DISCHARGE

6.1     Executory Contracts and Unexpired Leases: All executory contracts or unexpired leases that have not been assumed and/or assigned by an Order of the Bankruptcy Court or that are not to be expressly assumed under the Debtor's Plan shall be deemed Rejected Contracts as of the Effective Date. The Debtor shall assume Publix Supermarkets, Inc.'s unexpired lease and continue making payments pursuant to the lease agreement. The Debtor shall cure the arrearages owed to Publix in the amount of $11,674.51 in full on the Effective Date of the Plan.

6.2     Release and Discharge: The rights afforded to the holders of Claims by and in the Plan shall be in exchange for and in complete release, satisfaction, and discharge, to the fullest extent permitted by applicable law, of all claims of any nature whatsoever against the Debtor. This release and discharge shall be effective as of the Effective Date.

### ARTICLE VII
### PRESENT OPERATION

The Debtor is presently operating as a Debtor-in-Possession ("DIP") and proposes this Disclosure Statement and Plan to restructure its financial affairs and continue operating. More detailed information is set forth in the Debtor's "Bankruptcy Schedules" and "Case Management Summary" which are filed with the Bankruptcy Court and are a matter of record.

## ARTICLE VIII
## THE REORGANIZED DEBTOR

Following confirmation, Jeffrey A. Martin, DMD will continue to serve as the Debtor's President. The Debtor will continue to compensate Dr. Martin in accordance with the Court's Order Granting Motion for Authority to Pay Officer's Salary (Doc. No. 58) in the bi-weekly amount of $3,076.80. In the event the Debtor meets all of its financial obligations under the Plan and, if profitable, the Debtor may provide reasonable increases in officer and/or employee compensation consistent with its reasonable business judgment and consistent with such compensation that exists in the Debtor's industry or market. Debtor may also choose to prepay its plan obligations.

## ARTICLE VIX
## DEBTOR'S EFFORTS TO FACILITATE REORGANIZATION

The Debtor has filed a Chapter 11 in order to restructure its financial affairs. During the pendency of the Chapter 11 Case, the Debtor was successful at reaching an agreement with its largest creditor, Bank United. By restructuring its obligations, increasing its gross revenues as the economy stabilizes and improves the Debtor will be in a better position to reorganize. Debtor's post petition financial performance, payment of adequate protection, U.S. Trustee fees, and administrative expenses as approved by the Court, all demonstrate that the Plan is feasible.

## ARTICLE X
## LIQUIDATION ANALYSIS

A Chapter 11 plan cannot be confirmed unless the Bankruptcy Court finds that the plan is in the "best interests" of creditors and equity holders, taking into account the liquidation value of the debtor. In applying the "best interests" test of § 1129(a)(7) of the Bankruptcy Code, the Bankruptcy Court would ascertain the hypothetical recoveries in a Chapter 7 liquidation to secured creditors, priority claimants, general unsecured creditors and equity holders. These

hypothetical Chapter 7 liquidation recoveries would then be compared to the distributions offered to each class of claims or interests under the proposed Chapter 11 plan to determine if the plan satisfies the "best interests" test as set forth in § 1129(a)(7) of the Bankruptcy Code. A liquidation analysis is attached hereto as Exhibit "A" and by reference incorporated herein.

Other Alternatives to the Plan. If the Plan is not confirmed, the Debtor or any other party in interest could attempt to formulate a different Chapter 11 plan or convert the Bankruptcy Case to a Chapter 7.

THE DEBTOR BELIEVES THAT THE CONFIRMATION AND IMPLEMENTATION OF THE PLAN IS PREFERABLE TO THE CHAPTER 7 LIQUIDATION ALTERNATIVE BECAUSE THE PLAN SHOULD PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN A CHAPTER 7 LIQUIDATION.

## ARTICLE XI
### INCOME AND EXPENSE STATEMENT SINCE FILING PETITION

See attached Exhibit "B".

## ARTICLE XII
### PROJECTED INCOME AND EXPENSES FOR LIFE OF PLAN

See attached Exhibit "C".

## ARTICLE XIII
### SUMMARY OF PLAN OF REORGANIZATION

Since this is not a "mega" Chapter 11 case, the Debtor's Plan is short enough wherein a summary of the Plan of Reorganization would not be helpful in the opinion of the Debtor.

## ARTICLE XIV
### MEANS OF EXECUTION OF THE PLAN/FUNDING OF PLAN

The Debtor shall make payments under the Plan from the operations of the Debtor's business.

14

## ARTICLE XV
## EFFECTIVE DATE

The Effective Date of the Plan shall be thirty (30) days after confirmation of the Plan. The Debtor shall continue adequate protection payments or payments approved by the Court until the Effective Date of the Plan.

## ARTICLE XVI
## CRAM DOWN

If Debtor does not initially obtain sufficient votes to approve the Plan of Reorganization, the Debtor will attempt to obtain a cramdown of the Plan of Reorganization.

## ARTICLE XVII
## RETENTION OF LIENS

All secured creditors shall retain their liens on their respective collateral until their secured claims are paid in full. All notes, mortgages, security agreements shall remain in full force and effect except as modified by the Plan.

## ARTICLE XVIII
## RETENTION OF JURISDICTION

The Bankruptcy Court will retain jurisdiction as provided for by the Bankruptcy Code and other applicable law. The Bankruptcy Court will retain jurisdiction to determine all issues related to the Debtor's Plan, including enforcement of any plan default.

## ARTICLE XIX
## NO LIABILITY FOR TAX CLAIMS

Unless a taxing Governmental Authority has asserted a Claim against the Debtor before the Bar Date or Administrative Expense Claims Bar Date established therefore, no Claim of such Governmental Authority shall be allowed against the Debtor or the Reorganized Debtor or their respective members, officers or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its affiliates, or any other

15

person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

## ARTICLE XX
## TAX CONSIDERATIONS

### A.    General

A summary description of certain U.S. federal income tax consequences of the Plan is provided below.  The description of tax consequences below is for informational purposes only and is subject to significant uncertainties.  Only the principal consequences of the Plan for the Debtor and for the holders of Allowed Claims and Equity Interests who are entitled to vote to accept or reject the Plan are described below.  No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement.  No rulings or determinations of the IRS or any other taxing authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

The following discussion of U.S. federal income tax consequences is based on the Internal Revenue Code of 1986, as amended (the "Tax Code"), regulations promulgated and proposed thereunder, and judicial decisions and administrative rulings and pronouncements of the IRS as in effect on the date hereof.  Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below.  It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to Holders.  Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal tax consequences of the Plan to special classes of taxpayers

(such as foreign entities, nonresident alien individuals, Pass-through entities such as partnerships and holders through such pass-through entities, S corporations, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, certain securities traders, broker-dealers and tax-exempt organizations). Furthermore, estate and gift tax issues are not addressed herein and tax consequences relating to the alternative minimum tax are generally not discussed herein.

No representations are made regarding the particular tax consequences of the Plan to any Holder of a Claim or Equity Interest. Each Holder of a claim or Equity Interest is strongly urged to consult its own tax advisor regarding the federal, state, local and foreign tax consequences of the transactions described herein and in the Plan.

**B.      Federal Income Tax Consequences to the Debtors.**

Generally, the discharge of a debt obligation by a debtor for an amount less than the adjusted issues price (in most cases, the amount the debtor received on incurring the obligation with certain adjustments) gives rise to cancellation of a debt ("COD") income, which must be included in the debtor's income. The Debtors should have COD income as a result of the Plan; the Debtors should, however, be able to utilize a special tax provision which excludes from taxable income debts discharged in a chapter 11 case.  If debts are discharged in a chapter 11 case, however, certain tax attributes otherwise available must be reduced by the amount of COD income that is excludable from income. Tax attributes subject to reduction generally include net operating losses and net operating loss carryovers (collectively, "NOLs"). Any NOLs would be reduced (assuming the Debtors do not make an election pursuant to section 108(b)(5) of the Internal Revenue Code (title 26 of the United States Code) to first reduce the tax basis of depreciable property) to the extent of the COD income exclusions.

Federal income taxes generally must be satisfied before most other claims may be paid. To the extent the Debtors have taxable income after the Effective Date the Debtors may have NOLs to offset such income.

**C.     Federal Income Tax Consequences to Creditors and Interestholders**

Creditors should generally recognize gain (or loss) to the extent the amount realized under the Plan (generally the amount of cash received) in respect of their Claims Exceeds (or is exceeded by) their respective tax bases in their Claims.  The tax treatment of holders of Claims and the character and mount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan will depend upon, amount other things, (i) the nature and origin of the Claim, (ii) the manner in which a Creditor acquired a Claim, (iii) the length of time a Claim has been held, (iv) whether the Claim was acquired at a discount, (v) whether the Creditor has taken a bad debt deduction in the current or prior years, (vi) whether the Creditor has previously included in income accrued but unpaid interest with respect to a Claim, (vii) the method of tax accounting of a Creditor; and (viii) whether a Claim is an installment obligation for U.S. federal income tax purposes.  Therefore, Creditors should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequence to such Creditors as a result thereof.

The tax treatment of a Creditor that receives distributions in different taxable years is uncertain.  If such a Creditor treats the transaction as closed in the taxable year that it first receives (or is deemed to have received) a distribution of cash and/or other property, it should recognize gain or loss for such tax year in an amount equal to the cash and the value of other property actually (and deemed) received in such tax year (other than that received in respect of accrued interest) with respect to its Claim (other than any portion of the Claim that is attributable

18

to accrued interest) plus the estimated value of future distributions (if any) less its tax basis in its Claim (except to the extent its Claim is for accrued interest). A Creditor should then subsequently recognize additional income or loss when additional property distributions are actually received in an amount equal to the cash and/or value of such other property (other than that received in respect of accrued interest) less the Creditor's allocable tax basis in its Claim with respect to such subsequent distribution. A creditor may have to treat a portion of any such subsequent distribution as imputed interest recognizable as ordinary income in accordance with the Creditor's method of tax accounting. If instead the open transaction doctrine applies as a result of the value of the subsequent distributions that a Creditor may receive not being ascertainable on the Effective Date, such Creditor should not recognize gain (except to the extent that the value of the cash and/or other property already received exceeds such Creditor's adjusted tax basis in its Claim (other than any Claim for accrued interest)) or loss with respect to its Claim until it receives the final distribution thereon (which may not be until the final distribution date). It is the position of the IRS that the open transaction doctrine only applies in rare and extraordinary cases. Creditors are urged to consult their own tax advisors regarding the application of the open transaction doctrine and how it may apply to their particular situations, whether any gain recognition may be deferred under the installment method, whether any loss may be disallowed or deferred under the related party rules and the tax treatment of amounts that certain Creditors may be treated as paying to other Creditors.

Holders of Allowed Claims will be treated as receiving a payment of interest (in addition to any imputed interest as discussed in the preceding paragraph) includible in income in accordance with the Holder's method of accounting for tax purposes, to the extent that any Cash and/or other property received pursuant to the Plan is attributable to accrued but unpaid interest,

if any, on such Allowed Claims. The extent to which the receipt of Cash and/or other property should be attributable to accrued but unpaid interest is unclear. The Plan provides that such Cash and/or other property distributed pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of Cash and/or other property should be attributable to accrued but unpaid interest is unclear. The Plan provides that such Cash and/or other property distributed pursuant to the Plan will first be allocable to the principal amount of an Allowed Claim and then, to the extent necessary, to any accrued but unpaid interest thereon. Each Creditor should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any) and whether any such interest may be considered to be foreign source income. A Creditor generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

**D.      Holders of Allowed Equity Interests**

The Holders of Allowed Equity Interests in the Debtors are urged to consult with their tax advisors with respect to the tax consequences under the Plan. The Holders of Allowed Equity Interests and their advisors may wish to consider, among any other relevant considerations, the extent to which the Holder of an Allowed Equity Interest may be entitled to a bed debt deduction or a worthless security loss in respect of the cancellation of its shares of the Debtors' common stock under the Plan.

**E.      Holders of Disputed Claims**

Though not beyond doubt, Holders of Disputed Claims should not recognize any gain or loss on the date that Cash is transferred to the Disputed Claims Reserve, but should recognize gain or loss in an amount equal to: (i) the amount of Cash and the fair market value of any other

property actually distributed to such claimants (other than any amounts attributable to accrued and unpaid interest) less (ii) the adjusted tax basis of their Claims (other than for accrued and unpaid interest). Holders of Disputed Claims are urged to consult their own tax advisors regarding the taxation of their Disputed Claims and the timing and amount of income or loss recognized relating to the Disputed Claims Reserve.

**F.    Information Reporting and Backup Withholding**

Certain payments, including payments of Allowed Claims pursuant to the Plan, are generally subject to information reporting by the payor to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the backup withholding rules, a Holder of a Claim may be subject to backup withholding at the applicable tax rate with respect to distributions or payments made pursuant to the Plan, unless the Holder: (i) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (ii) provides a correct taxpayer identification number and certifies under penalty of perjury as to the correctness of its taxpayer identification number and certain other tax matters. Backup withholding is not an additional tax. Rather, the federal income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of federal income taxes, a Holder may obtain a refund of any excess amounts withheld under the backup withholding rules by timely filing the appropriate claim for refund with the IRS.

**G.    Importance of Obtaining Professional Tax Assistance**

THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE

ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES OF THE PLAN ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CREDITOR'S INDIVIDUAL CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO CONSULT WITH THEIR OWN TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

### ARTICLE XXI
### AMOUNT OF CLAIMS

The amount of claims provided for in the Plan are for informational purposes only and do not bind the parties. The amount of the claim to be paid to each creditor shall be determined by the Debtor's Schedules and Proofs of Claim filed by each individual Creditor, if not objected to or disallowed by Court Order.

Dated this 10 day of June, 2014.

MDM OF LAKELAND, PA d/b/a Highlands Dental

By: _____
Jeffrey A. Martin, President

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **DISCLOSURE STATEMENT** has been furnished either by the Court's CM/ECF system or by regular U. S. Mail to the **Office of the U.S. States Trustee**, 501 E. Polk St., Ste. 1200, Tampa, FL 33602; and **MDM of Lakeland, PA**, 701 S. Howard Ave., Ste. 106-386, Tampa, FL 33606 on this 10 day of June, 2014.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Alberto F. Gomez, Jr.
Alberto F. Gomez, Jr. (FBN: 784486)
Angelina E. Lim (FBN 158313)
403 E. Madison Street (33602)
P.O. Box 1100
Tampa, FL  33601-1100
Telephone:     813-225-2500
Facsimile:      813-223-7118
Email: Al@jpfirm.com
         AngelinaL@jpfirm.com
Attorneys for Debtor

Exhibit "A"

# MDM OF LAKELAND, P.A.
## SUMMARY OF ASSETS AND LIABILITIES

AS OF 5/22/14

| ASSETS | LIQUIDATION VALUE | | REORGANIZATION PLAN | |
|---|---|---|---|---|
| Approximate Cash in Banks | $ | 25,000.00 | $ | 25,000.00 |
| Approximate Accounts Receivable (Collectable) | $ | 48,000.00 | $ | 120,000.00 |
| Approximate Value of Book of Business | $ | 100,000.00 | $ | 251,500.00 |
| Estimated Equipment | $ | 5,500.00 | $ | 11,000.00 |
| Estimated Inventory | $ | 1,250.00 | $ | 2,500.00 |
| Estimated Office Furniture Equipment & Machines | $ | 2,500.00 | $ | 5,000.00 |
| **Total** | **$** | **182,250.00** | **$** | **415,000.00** |

| PROFESSIONAL MISC | | | | |
|---|---|---|---|---|
| Debtors Counsel | $ | 40,000.00 | $ | 40,000.00 |
| Misc. Professional fees | $ | 10,000.00 | $ | 10,000.00 |
| Taxes (IRS & Tax Collector) | $ | 7,823.23 | $ | 7,823.23 |
| Pre-Petition Rent | $ | 11,674.51 | $ | 11,674.51 |
| **Total** | **$** | **69,497.74** | **$** | **69,497.74** |

| | | | |
|---|---|---|---|
| Total Estimated Unsecured Claims | $ | 1,652,285.61 | **Total Monthly Unsecured Payments** |
| TOTAL DIST TO UNSECURED CLAIMS | | $0.00 | $82,620.00    5.00% |

Exhibit "B"

### SCHEDULE OF RECEIPTS AND DISBURSEMENTS
### FOR THE PERIOD BEGINNING FEBRUARY 12  AND ENDING FEBRUARY 28

Name of Debtor:  MDM of Lakeland, PA         Case Number  8:14-bk-1546

               d/b/a Highlands Dental

Date of Petition:  FEBRUARY 12, 2014

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | $ 17,531.62  (a) | $  17,531.62 |
| 2. RECEIPTS: | | |
|    A. Cash Sales | $ 4,525.70 | 4,525.70 |
|       Minus:  Cash Refunds | (-) | |
|       Net Cash Sales | $ 4,525.70 | 4,525.70 |
|    B. Accounts Receivable | $ 0.00 | |
|    C. Other Receipts *(See MOR-3)* | .01 | .01 |
|       (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS *(Lines 2A+2B+2C)* | $  4,525.71 | $  4,525.71 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | $ 22,057.33 | $  22,057.33 |
| | | . |
| 5. DISBURSEMENTS | | |
|    A. Advertising | 0.00 | .00 |
|    B. Bank Charges | (.81) | (.81) |
|    C. Contract Labor | | |
|    D. Fixed Asset Payments (not incl. in "N") | | |
|    E. Insurance | 21.58 | 21.58 |
|    F.  Inventory Payments  *(See Attach. 2)* | | |
|    G. Leases | | |
|    H. Manufacturing Supplies | | |
|    I.  Office Supplies | 300.00 | 300.00 |
|    J.  Payroll - Net *(See Attachment 4B)* | 2,959.06 | 2,959.06 |
|    K. Professional Fees (Accounting & Legal) | | |
|    L.  Rent | 0.00 | |
|    M. Repairs & Maintenance | | |
|    N.  Secured Creditor Payments *(See Attach. 2)* | 0.00 | |
|    O. Taxes Paid - Payroll *(See Attachment 4C)* | 278.34 | 278.34 |
|    P. Taxes Paid - Sales & Use *(See Attachment 4C)* | | |
|    Q. Taxes Paid - Other *(See Attachment 4C)* | | |
|    R. Telephone | | |
|    S.  Travel & Entertainment | | |
|    Y.  U.S. Trustee Quarterly Fees | | |
|    U. Utilities | | |
|    V. Vehicle Expenses | | |
|    W. Other Operating Expenses *(See MOR-3)* | 132.11 | 132.11 |
| 6. TOTAL DISBURSEMENTS *(Sum of 5A thru W)* | 3,690.28 | 3,690.28 |
| 7. ENDING BALANCE *(Line 4 Minus Line 6)* | 18,367.05  (c) | 18,367.05  (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This  19  day of  March , 20 14 .  _____

                                      (Signature)

(a)This number is carried forward from last month's report.  For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month.  It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

MOR-2

**SCHEDULE OF RECEIPTS AND DISBURSEMENTS**
FOR THE PERIOD BEGINNING **MARCH 1** AND ENDING **MARCH 31**

Name of Debtor: __MDM of Lakeland, PA__           Case Number __8:14-bk-1546__

d/b/a Highlands Dental

d/b/a All About Teeth Lakeland

Date of Petition: __FEBRUARY 12, 2014__

|  | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | $ 18,367.05 | $ 17,531.62 |
| 2. RECEIPTS: | | |
|    A. Cash Sales | $ 11,284.70 | 15,810.40 |
|    Minus: Cash Refunds | (-) | |
|    Net Cash Sales | $ 11,284.70 | 15,810.40 |
|    B. Accounts Receivable | $ 58,842.81 | 58,842.81 |
|    C. Other Receipts (See MOR-3) | | .01 |
|    (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | $ 70,127.51 | $ 74,653.22 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | $ 88,494.56 | $ 92,184.84 |
| 5. DISBURSEMENTS | | |
|    A. Advertising | 0.00 | .00 |
|    B. Bank Charges | 18.60 | 17.79 |
|    C. Contract Labor | | |
|    D. Fixed Asset Payments (not incl. in "N") | | |
|    E. Insurance | 101.32 | 122.90 |
|    F. Inventory Payments (See Attach. 2) | | |
|    G. Leases | | |
|    H. Manufacturing Supplies | 3,453.26 | 3,453.26 |
|    I. Office Supplies | 744.11 | 1,044.11 |
|    J. Payroll - Net (See Attachment 4B) | 17,180.53 | 20,139.59 |
|    K. Professional Fees (Accounting & Legal) | | |
|    L. Rent | 3,296.96 | 3,296.96 |
|    M. Repairs & Maintenance | | |
|    N. Secured Creditor Payments (See Attach. 2) | 13,000.00 | 13,000.00 |
|    O. Taxes Paid - Payroll (See Attachment 4C) | 2,227.76 | 2,506.10 |
|    P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
|    Q. Taxes Paid - Other (See Attachment 4C) | | |
|    R. Telephone | | |
|    S. Travel & Entertainment | | |
|    Y. U.S. Trustee Quarterly Fees | | |
|    U. Utilities | 833.98 | 833.98 |
|    V. Vehicle Expenses | | |
|    W. Other Operating Expenses (See MOR-3) | 4,550.68 | 4,682.79 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 45,407.20 | 49,097.48 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 43,087.36 (c) | 43,087.36 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true and correct to the best of my knowledge and belief.

This __1__ day of __April__, 20__14__.                    _____
                                                                                                (Signature)

(a)This number is carried forward from last month's report. For the first report only, this number will be the balance as of the petition date.

(b)This figure will not change from month to month. It is always the amount of funds on hand as of the date of the petition.

(c)These two amounts will always be the same if form is completed correctly.

MOR-2

SCHEDULE OF RECEIPTS AND DISBURSEMENTS
FOR THE PERIOD BEGINNING APRIL 1  AND ENDING APRIL 30

Name of Debtor: MDM of Lakeland, PA

d/b/a Highlands Dental

d/b/a All About Teeth Lakeland

Date of Petition:  FEBRUARY 12, 2014

Case Number 8:14-bk-1546

| | CURRENT MONTH | CUMULATIVE PETITION TO DATE |
|---|---|---|
| 1. FUNDS AT BEGINNING OF PERIOD | $ 43,087.36 | $ 17,531.62 |
| 2. RECEIPTS: | | |
| A. Cash Sales | $ 9,027.80 | 24,838.20 |
| Minus: Cash Refunds | (-) | |
| Net Cash Sales | $ 9,027.80 | 24,838.20 |
| B. Accounts Receivable | $ 30,358.75 | 89,201.56 |
| C. Other Receipts (See MOR-3) | | .01 |
| (If you receive rental income, you must attach a rent roll.) | | |
| 3. TOTAL RECEIPTS (Lines 2A+2B+2C) | $ 39,386.55 | $ 114,039.77 |
| 4. TOTAL FUNDS AVAILABLE FOR OPERATIONS (Line 1 + Line 3) | $ 82,473.91 | $ 131,571.39 |
| | | |
| 5. DISBURSEMENTS | | |
| A. Advertising | 3,375.00 | 3,375.00 |
| B. Bank Charges | 2.50 | 20.29 |
| C. Contract Labor | | |
| D. Fixed Asset Payments (not incl. in "N") | | |
| E. Insurance | 73.62 | 196.52 |
| F. Inventory Payments (See Attach. 2) | | |
| G. Leases | | |
| H. Manufacturing Supplies | 2,686.37 | 6,139.63 |
| I. Office Supplies | 1,121.09 | 2,165.20 |
| J. Payroll - Net (See Attachment 4B) | 19,829.47 | 39,969.06 |
| K. Professional Fees (Accounting & Legal) | | |
| L. Rent | 3,296.96 | 6,593.92 |
| M. Repairs & Maintenance | 260.00 | 260.00 |
| N. Secured Creditor Payments (See Attach. 2) | 0.00 | 13,000.00 |
| O. Taxes Paid - Payroll (See Attachment 4C) | 1,524.34 | 4,030.44 |
| P. Taxes Paid - Sales & Use (See Attachment 4C) | | |
| Q. Taxes Paid - Other (See Attachment 4C) | | |
| R. Telephone | | |
| S. Travel & Entertainment | | |
| Y. U.S. Trustee Quarterly Fees | | |
| U. Utilities | 0.00 | 833.98 |
| V. Vehicle Expenses | | |
| W. Other Operating Expenses (See MOR-3) | 6,359.54 | 11,042.33 |
| 6. TOTAL DISBURSEMENTS (Sum of 5A thru W) | 38,528.89 | 87,626.37 |
| 7. ENDING BALANCE (Line 4 Minus Line 6) | 43,945.02 (c) | 43,945.02 (c) |

I declare under penalty of perjury that this statement and the accompanying documents and reports are true
and correct to the best of my knowledge and belief.

This 18 day of April, 20 .                    _____
                                                                    (Signature)

(a) This number is carried forward from last month's report.  For the first report only, this number will be the
    balance as of the petition date.
(b) This figure will not change from month to month.  It is always the amount of funds on hand as of the date of
    the petition.
(c) These two amounts will always be the same if form is completed correctly.

MOR-2

Exhibit "C"

**MDM OF LAKELAND, P.A. D/B/A ALL ABOUT TEETH**
**PROJECTED PLAN 60 MONTH BUDGET**
**YEAR 1**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | |
| Total Revenue | 45,000 | 45,000 | 54,000 | 45,000 | 45,000 | 51,750 | 51,750 | 51,750 | 51,750 | 62,100 | 51,750 | 51,750 | 606,600 | 100.0% |
| | 45,000 | 45,000 | 54,000 | 45,000 | 45,000 | 51,750 | 51,750 | 51,750 | 51,750 | 62,100 | 51,750 | 51,750 | 606,600 | |
| **COGS** | | | | | | | | | | | | | | |
| Laboratory Fees | 1,575 | 1,575 | 1,890 | 1,575 | 1,575 | 2,100 | 2,100 | 2,100 | 2,100 | 2,500 | 2,100 | 2,100 | 23,290 | 3.8% |
| Medical Supplies | 2,250 | 2,250 | 2,700 | 2,250 | 2,250 | 2,600 | 2,600 | 2,600 | 2,600 | 3,100 | 2,600 | 2,600 | 30,400 | 5.0% |
| Non-Insider Labor | 7,000 | 14,000 | 21,000 | 14,000 | 14,000 | 16,720 | 16,720 | 16,720 | 16,720 | 25,080 | 18,720 | 18,720 | 195,400 | 32.2% |
| Non-Insider Taxes | 700 | 1,400 | 2,100 | 1,400 | 1,400 | 1,535 | 1,535 | 1,535 | 1,535 | 2,303 | 1,535 | 1,535 | 18,513 | 3.1% |
| Insider Labor | 6,200 | 6,200 | 9,300 | 6,200 | 6,200 | 6,200 | 6,200 | 6,200 | 6,200 | 9,300 | 6,200 | 6,200 | 80,600 | 13.3% |
| Insider Taxes | 600 | 600 | 900 | 600 | 600 | 600 | 600 | 600 | 600 | 900 | 600 | 600 | 7,800 | 1.3% |
| Total COGS | 18,325 | 26,025 | 37,890 | 26,025 | 26,025 | 29,755 | 29,755 | 29,755 | 29,755 | 43,183 | 29,755 | 29,755 | 356,003 | 58.7% |
| **Gross Profit** | 26,675 | 18,975 | 16,110 | 18,975 | 18,975 | 21,995 | 21,995 | 21,995 | 21,995 | 18,918 | 21,995 | 21,995 | 250,598 | 41.3% |
| **Sales** | | | | | | | | | | | | | | |
| Marketing & Advertising | 3,375 | 3,375 | 3,375 | 3,375 | 3,375 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 41,375 | 6.8% |
| Travel | 250 | 250 | 250 | 250 | 250 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,350 | 0.6% |
| Meals & Entertainment | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 0.4% |
| Total Sales | 3,825 | 3,825 | 3,825 | 3,825 | 3,825 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 47,125 | 7.8% |
| **Office** | | | | | | | | | | | | | | |
| Rent | 14,975 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 55,675 | 9.2% |
| Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 2.0% |
| Repairs | 275 | 275 | 275 | 275 | 275 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,475 | 0.6% |
| Total Office | 16,250 | 4,975 | 4,975 | 4,975 | 4,975 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 71,150 | 11.7% |
| **Admin** | | | | | | | | | | | | | | |
| Insurance | 100 | 100 | 100 | 100 | 100 | 100.00 | 3,500.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 4,600 | 0.8% |
| Waste Disposal | 175 | 175 | 175 | 175 | 175 | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 | 175.00 | 2,100 | 0.3% |
| Bank Fees | 500 | 500 | 500 | 500 | 500 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 6,000 | 1.0% |
| Licenses & Permits | | | | | | 1,100.00 | | | | | | | 1,100 | 0.2% |
| Telephone and Internet | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 15,000 | 2.5% |
| Postage | 100 | 100 | 100 | 100 | 100 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 1,200 | 0.2% |
| Legal & Professional | 300 | 300 | 300 | 300 | 300 | 300.00 | 300.00 | 1,000.00 | 300.00 | 300.00 | 300.00 | 300.00 | 4,300 | 0.7% |
| Office Supplies | 700 | 700 | 700 | 700 | 700 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 700.00 | 8,400 | 1.4% |
| Total Admin | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 4,225 | 6,525 | 3,825 | 3,125 | 3,125 | 3,125 | 3,125 | 42,700 | 7.0% |
| **Net Profit** | 3,475 | 7,050 | 4,185 | 7,050 | 7,050 | 8,770 | 6,470 | 9,170 | 9,870 | 6,782 | 9,870 | 9,870 | 89,623 | 14.8% |
| | | | | | | | | | | | | | | |
| Beginning Cash | 30,000 | 27,870 | 29,315 | 27,896 | 29,341 | 30,786 | 33,951 | 30,000 | 33,285 | 37,269 | 38,176 | 42,160 | | |
| Class 1 - Bank United | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (40,033) | |
| Class 2 - Tax Collectors | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (982) | |
| Class 3 - IRS | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (1,247) | |
| Class 6 - Unsecured | | | | | | | (280) | (280) | (280) | (280) | (280) | (280) | (1,680) | |
| Administrative Expenses | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,094) | (2,094) | (2,094) | (25,000) | |
| Net Profit | 3,475 | 7,050 | 4,185 | 7,050 | 7,050 | 8,770 | 6,470 | 9,170 | 9,870 | 6,782 | 9,870 | 9,870 | 89,623 | |
| Ending Cash | 27,870 | 29,315 | 27,996 | 29,341 | 30,786 | 33,951 | 34,536 | 33,285 | 37,269 | 38,176 | 42,160 | 46,144 | 46,144 | |
| | | | | | | | | | | | | | | |
| Change in cash | (2,130) | 1,445 | (1,420) | 1,445 | 1,445 | 3,165 | 585 | 3,285 | 3,984 | 907 | 3,984 | 3,984 | | |

**The Debtor will utilize the accumulated cash balance to satisfy its plan obligations or to obtain financing in whole or in part to satisfy its plan obligations.

**MDM OF LAKELAND, P.A. D/B/A ALL ABOUT TEETH**
**PROJECTED PLAN 60 MONTH BUDGET**
**YEAR 2**

| | | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | Total Revenue | 51,750 | 51,750 | 62,100 | 51,750 | 51,750 | 62,100 | 62,100 | 62,100 | 74,500 | 62,100 | 62,100 | 62,100 | 716,200 | 100.0% |
| **COGS** | Laboratory Fees | 2,100 | 2,100 | 2,500 | 2,100 | 2,100 | 4,300 | 4,300 | 4,300 | 5,200 | 4,300 | 4,300 | 4,300 | 41,900 | 5.9% |
| | Medical Supplies | 2,600 | 2,600 | 3,100 | 2,600 | 2,600 | 5,600 | 5,600 | 5,600 | 6,700 | 5,600 | 5,600 | 5,600 | 53,800 | 7.5% |
| | Non-Insider Labor | 16,720 | 16,720 | 25,000 | 16,720 | 16,720 | 16,720 | 16,720 | 16,720 | 25,000 | 16,720 | 16,720 | 16,720 | 217,360 | 30.3% |
| | Non-Insider Taxes | 1,535 | 1,535 | 2,303 | 1,535 | 1,535 | 1,535 | 1,535 | 1,535 | 2,303 | 1,535 | 1,535 | 1,535 | 19,965 | 2.8% |
| | Insider Labor | 6,200 | 6,200 | 9,300 | 6,200 | 6,200 | 6,200 | 6,200 | 6,200 | 9,300 | 6,200 | 6,200 | 6,200 | 80,800 | 11.3% |
| | Insider Taxes | 600 | 600 | 900 | 600 | 600 | 600 | 600 | 600 | 900 | 600 | 600 | 600 | 7,800 | 1.1% |
| | Total COGS | 29,755 | 29,755 | 43,183 | 29,755 | 29,755 | 34,955 | 34,955 | 34,955 | 49,483 | 34,955 | 34,955 | 34,955 | 421,415 | 58.8% |
| **Gross Profit** | | 21,995 | 21,995 | 18,918 | 21,995 | 21,995 | 27,145 | 27,145 | 27,145 | 25,018 | 27,145 | 27,145 | 27,145 | 294,785 | 41.2% |
| **Sales** | Marketing & Advertising | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 66,500 | 9.3% |
| | Travel | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 | 0.5% |
| | Meals & Entertainment | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 0.3% |
| | Total Sales | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 72,500 | 10.1% |
| **Office** | Rent | 3,700 | 3,700 | 3,700 | 3,700 | 3,700 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 45,800 | 6.4% |
| | Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 1.7% |
| | Repairs | 300 | 300 | 300 | 300 | 300 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 8,500 | 1.2% |
| | Total Office | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,900 | 5,900 | 5,900 | 5,900 | 5,900 | 5,900 | 5,900 | 66,300 | 9.3% |
| **Admin** | Insurance | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 4,700 | 0.7% |
| | Waste Disposal | 175 | 175 | 175 | 175 | 175 | 175 | 200 | 200 | 200 | 200 | 200 | 200 | 2,275 | 0.3% |
| | Bank Fees | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 0.8% |
| | Licenses & Permits | - | - | - | - | - | 1,100 | - | - | - | - | - | - | 1,100 | 0.2% |
| | Telephone and Internet | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 15,350 | 2.1% |
| | Postage | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 | 0.2% |
| | Legal & Professional | 300 | 300 | 300 | 300 | 300 | 500 | 500 | 1,500 | 500 | 500 | 500 | 500 | 6,000 | 0.8% |
| | Office Supplies | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 | 1.2% |
| | Total Admin | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 4,500 | 3,900 | 4,400 | 3,400 | 3,400 | 3,400 | 3,400 | 45,025 | 6.3% |
| **Net Profit** | | 9,870 | 9,870 | 6,782 | 9,870 | 9,870 | 9,245 | 6,845 | 9,345 | 8,218 | 10,345 | 10,345 | 10,345 | 110,060 | 15.5% |
| | Beginning Cash | 46,144 | 50,130 | 54,115 | 55,023 | 59,008 | 62,993 | 66,353 | 66,563 | 69,274 | 70,855 | 74,564 | 78,274 | 78,274 | |
| | Class 1- Bank United | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (40,033) | (982) |
| | Class 2-Tax Collectors | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (982) | |
| | Class 3-IRS | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (1,247) | |
| | Class 6-Unsecured | (280) | (280) | (280) | (280) | (280) | (280) | (280) | (280) | (280) | (280) | (280) | (280) | (7,860) | |
| | Administrative Expenses | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,083) | (2,084) | (2,084) | (2,084) | (2,084) | (25,000) | |
| | Net Profit | 9,870 | 9,870 | 6,792 | 9,870 | 9,870 | 9,245 | 6,845 | 9,345 | 8,218 | 10,345 | 10,345 | 10,345 | 110,980 | |
| | Ending Cash | 50,130 | 54,115 | 55,023 | 59,008 | 62,993 | 66,353 | 66,563 | 69,274 | 70,855 | 74,564 | 78,274 | 81,983 | 81,983 | |
| | Change in cash | 3,985 | 3,985 | 908 | 3,985 | 3,985 | 3,360 | 210 | 2,710 | 1,582 | 3,709 | 3,709 | 3,709 | | |

**The Debtor will utilize the accumulated cash balance to satisfy its plan obligations or to obtain financing in whole or in part to satisfy its plan obligations.

**MOM OF LAKELAND, P.A. D/B/A ALL ABOUT TEETH**
**PROJECTED PLAN 60 MONTH BUDGET**
**YEAR 3**

| | | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | | |
| | Total Revenue | 62,100 | 74,500 | 62,100 | 62,100 | 62,100 | 68,300 | 68,300 | 81,960 | 68,300 | 68,300 | 68,300 | 68,300 | 814,660 | 100.0% |
| | | 62,100 | 74,500 | 62,100 | 62,100 | 62,100 | 68,300 | 68,300 | 81,960 | 68,300 | 68,300 | 68,300 | 68,300 | 814,660 | |
| **COGS** | | | | | | | | | | | | | | | |
| | Laboratory Fees | 4,300 | 5,200 | 4,300 | 4,300 | 4,300 | 5,500 | 5,500 | 6,600 | 5,500 | 5,500 | 5,500 | 5,500 | 62,000 | 7.6% |
| | Medical Supplies | 5,600 | 6,700 | 5,600 | 5,600 | 5,600 | 7,500 | 7,500 | 9,000 | 7,500 | 7,500 | 7,500 | 7,500 | 83,100 | 10.2% |
| | Non-Insider Labor | 16,720 | 25,080 | 16,720 | 16,720 | 16,720 | 17,200 | 17,200 | 25,800 | 17,200 | 17,200 | 17,200 | 17,200 | 220,980 | 27.1% |
| | Non-Insider Taxes | 1,535 | 2,303 | 1,535 | 1,535 | 1,535 | 1,600 | 1,600 | 2,400 | 1,600 | 1,600 | 1,600 | 1,600 | 20,443 | 2.5% |
| | Insider Labor | 6,200 | 9,300 | 6,200 | 6,200 | 6,200 | 6,400 | 6,400 | 9,600 | 6,400 | 6,400 | 6,400 | 6,400 | 82,100 | 10.1% |
| | Insider Taxes | 600 | 900 | 600 | 600 | 600 | 600 | 600 | 900 | 600 | 600 | 600 | 600 | 7,800 | 1.0% |
| | Total COGS | 34,955 | 49,483 | 34,955 | 34,955 | 34,955 | 38,800 | 38,800 | 54,300 | 38,800 | 38,800 | 38,800 | 38,800 | 476,403 | 58.5% |
| | Gross Profit | 27,145 | 25,018 | 27,145 | 27,145 | 27,145 | 29,500 | 29,500 | 27,660 | 29,500 | 29,500 | 29,500 | 29,500 | 338,258 | 41.5% |
| **Sales** | | | | | | | | | | | | | | | |
| | Marketing & Advertising | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 105,000 | 12.9% |
| | Travel | 300 | 300 | 300 | 300 | 300 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 5,700 | 0.7% |
| | Meals & Entertainment | 200 | 200 | 200 | 200 | 200 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 3,800 | 0.5% |
| | Total Sales | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 114,500 | 14.1% |
| **Office** | | | | | | | | | | | | | | | |
| | Rent | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 47,500 | 5.8% |
| | Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 1.5% |
| | Repairs | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 13,750 | 1.7% |
| | Total Office | 5,900 | 5,900 | 5,900 | 5,900 | 5,900 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 73,250 | 9.0% |
| **Admin** | | | | | | | | | | | | | | | |
| | Insurance | 100 | 100 | 100 | 100 | 100 | 100 | 3,800 | 100 | 100 | 100 | 100 | 100 | 4,900 | 0.6% |
| | Waste Disposal | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 0.3% |
| | Bank Fees | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 0.7% |
| | Licenses & Permits | - | - | - | - | - | 1,200 | - | - | - | - | - | - | 1,200 | 0.1% |
| | Telephone and Internet | 1,300 | 1,300 | 1,300 | 1,300 | 1,300 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 16,300 | 2.0% |
| | Postage | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 | 0.1% |
| | Legal & Professional | 500 | 500 | 500 | 500 | 500 | 750 | 750 | 1,750 | 750 | 750 | 750 | 750 | 8,750 | 1.1% |
| | Office Supplies | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 | 1.0% |
| | Total Admin | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 4,950 | 7,450 | 4,750 | 3,750 | 3,750 | 3,750 | 3,750 | 49,150 | 6.0% |
| | Net Profit | 10,345 | 8,218 | 10,345 | 10,345 | 10,345 | 7,300 | 4,800 | 5,660 | 8,500 | 8,500 | 8,500 | 8,500 | 101,358 | 12.4% |
| | | | | | | | | | | | | | | | |
| | Beginning Cash | 81,983 | 87,776 | 91,442 | 97,235 | 103,028 | 108,821 | 111,570 | 111,068 | 111,426 | 114,624 | 117,822 | 121,021 | | |
| | Class 1 - Bank United | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (40,033) | |
| | Class 2-Tax Collections | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (982) | |
| | Class 3-IRS | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (1,247) | |
| | Class 5-Unsecured | (1,030) | (1,030) | (1,030) | (1,030) | (1,030) | (1,030) | (1,780) | (1,780) | (1,780) | (1,780) | (1,780) | (1,780) | (16,660) | |
| | Administrative Expenses | | | | | | | | | | | | | - | |
| | Net Profit | 10,345 | 8,218 | 10,345 | 10,345 | 10,345 | 7,300 | 4,800 | 5,660 | 8,500 | 8,500 | 8,500 | 8,500 | 101,358 | |
| | Ending Cash | 87,776 | 91,442 | 97,235 | 103,028 | 108,821 | 111,570 | 111,068 | 111,426 | 114,624 | 117,822 | 121,021 | 124,219 | | |
| | | | | | | | | | | | | | | | |
| | Change in cash | 5,793 | 3,666 | 5,793 | 5,793 | 5,793 | 2,748 | (502) | 358 | 3,198 | 3,198 | 3,198 | 3,198 | | |

**The Debtor will utilize the accumulated cash balance to satisfy its plan obligations or to obtain financing in whole or in part to satisfy its plan obligations.

**MOM OF LAKELAND, P.A. DBIA ALL ABOUT TEETH**
**PROJECTED PLAN 60 MONTH BUDGET**
**YEAR 4**

| | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 | 45 | 46 | 47 | 48 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | | | | | | | |
| Total Revenue | 68,300 | 81,960 | 68,300 | 68,300 | 68,300 | 75,100 | 75,100 | 90,120 | 75,100 | 75,100 | 75,100 | 75,100 | 895,880 | 100.0% |
| | 68,300 | 81,960 | 68,300 | 68,300 | 68,300 | 75,100 | 75,100 | 90,120 | 75,100 | 75,100 | 75,100 | 75,100 | 895,880 | |
| **COGS** | | | | | | | | | | | | | | |
| Laboratory Fees | 5,500 | 6,000 | 5,500 | 5,500 | 5,500 | 6,800 | 6,800 | 6,100 | 6,800 | 6,800 | 6,800 | 6,800 | 77,500 | 8.7% |
| Medical Supplies | 7,500 | 9,000 | 7,500 | 7,500 | 7,500 | 8,300 | 8,300 | 9,900 | 8,300 | 8,300 | 8,300 | 8,300 | 98,700 | 11.0% |
| Non-Insider Labor | 17,200 | 25,800 | 17,200 | 17,200 | 17,200 | 17,700 | 17,700 | 25,600 | 17,700 | 17,700 | 17,700 | 17,700 | 227,400 | 25.4% |
| Non-Insider Taxes | 1,600 | 2,400 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 2,500 | 1,600 | 1,600 | 1,600 | 1,600 | 20,800 | 2.3% |
| Insider Labor | 6,400 | 9,600 | 6,400 | 6,400 | 6,400 | 6,600 | 6,600 | 9,900 | 6,600 | 6,600 | 6,600 | 6,600 | 84,700 | 9.5% |
| Insider Taxes | 600 | 900 | 600 | 600 | 600 | 600 | 600 | 900 | 600 | 600 | 600 | 600 | 7,800 | 0.9% |
| Total COGS | 38,800 | 54,300 | 38,800 | 38,800 | 38,800 | 41,600 | 41,600 | 57,900 | 41,600 | 41,600 | 41,600 | 41,600 | 517,000 | 57.7% |
| Gross Profit | 29,500 | 27,660 | 29,500 | 29,500 | 29,500 | 33,500 | 33,500 | 32,220 | 33,500 | 33,500 | 33,500 | 33,500 | 378,880 | 42.3% |
| **Sales** | | | | | | | | | | | | | | |
| Marketing & Advertising | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 | 13.4% |
| Travel | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 0.8% |
| Meals & Entertainment | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 | 0.5% |
| Total Sales | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 132,000 | 14.7% |
| **Office** | | | | | | | | | | | | | | |
| Rent | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,100 | 4,100 | 4,100 | 4,100 | 4,100 | 4,100 | 4,100 | 48,700 | 5.4% |
| Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 1.3% |
| Repairs | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 23,750 | 2.7% |
| Total Office | 6,250 | 6,250 | 6,250 | 6,250 | 6,250 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 84,450 | 9.4% |
| **Admin** | | | | | | | | | | | | | | |
| Insurance | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 5,100 | 0.6% |
| Waste Disposal | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 0.3% |
| Bank Fees | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 0.7% |
| Licenses & Permits | - | - | - | - | - | 1,300 | - | - | - | - | - | - | 1,300 | 0.1% |
| Telephone and Internet | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 17,500 | 2.0% |
| Postage | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 | 0.1% |
| Legal & Professional | 750 | 750 | 750 | 750 | 750 | 800 | 800 | 1,800 | 800 | 800 | 800 | 800 | 10,350 | 1.2% |
| Office Supplies | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 | 0.9% |
| Total Admin | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 5,200 | 4,900 | 4,900 | 3,900 | 3,900 | 3,900 | 3,900 | 52,250 | 5.8% |
| Net Profit | 8,500 | 6,660 | 8,500 | 8,500 | 8,500 | 9,700 | 7,100 | 8,720 | 11,000 | 11,000 | 11,000 | 11,000 | 110,180 | 12.3% |
| | | | | | | | | | | | | | | |
| Beginning Cash | 124,219 | 127,417 | 128,775 | 131,973 | 135,172 | 138,370 | 142,768 | 143,816 | 146,464 | 151,433 | 156,381 | 161,329 | (40,033) | |
| Class 1- Bank United | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (982) | |
| Class 2-Tax Collectors | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (1,247) | |
| Class 3-IRS | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (104) | (25,860) | |
| Class 6-Unsecured | (1,780) | (1,780) | (1,780) | (1,780) | (1,780) | (1,780) | (1,780) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | - | |
| Administrative Expenses | | | | | | | | | | | | | | |
| Net Profit | 8,500 | 6,660 | 8,500 | 8,500 | 8,500 | 9,700 | 7,100 | 8,720 | 11,000 | 11,000 | 11,000 | 11,000 | 110,180 | |
| Ending Cash | 127,417 | 128,775 | 131,973 | 135,172 | 138,370 | 142,768 | 143,816 | 146,464 | 151,433 | 156,381 | 161,329 | 166,277 | 166,277 | |
| | | | | | | | | | | | | | | |
| Change in cash | 3,198 | 1,358 | 3,198 | 3,198 | 3,198 | 4,398 | 1,048 | 2,658 | 4,948 | 4,948 | 4,948 | 4,948 | | |

**The Debtor will utilize the accumulated cash balance to satisfy its plan obligations or to obtain financing in whole or in part to satisfy its plan obligations.

**MDM OF LAKELAND, P.A. D/B/A ALL ABOUT TEETH**
**PROJECTED PLAN 60 MONTH BUDGET**
**YEAR 5**

| | | 49 | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Revenue** | | 90,120 | 75,100 | 75,100 | 75,100 | 75,100 | 78,100 | 78,100 | 93,720 | 78,100 | 78,100 | 78,100 | 78,100 | 952,840 | 100.0% |
| | Total Revenue | 90,120 | 75,100 | 75,100 | 75,100 | 75,100 | 78,100 | 78,100 | 93,720 | 78,100 | 78,100 | 78,100 | 78,100 | 952,840 | 100.0% |
| **COGS** | | | | | | | | | | | | | | | |
| | Laboratory Fees | 8,100 | 6,800 | 6,800 | 6,800 | 6,800 | 7,000 | 7,000 | 8,400 | 7,000 | 7,000 | 7,000 | 7,000 | 85,700 | 9.0% |
| | Medical Supplies | 9,900 | 8,300 | 8,300 | 8,300 | 8,300 | 8,600 | 8,650 | 10,300 | 8,600 | 8,600 | 8,600 | 8,600 | 105,000 | 11.0% |
| | Non-Insider Labor | 26,600 | 17,700 | 17,700 | 17,700 | 17,700 | 18,200 | 18,200 | 27,400 | 18,200 | 18,200 | 18,200 | 18,200 | 234,000 | 24.6% |
| | Non-Insider Taxes | 2,550 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 2,600 | 1,600 | 1,600 | 1,600 | 1,600 | 21,100 | 2.2% |
| | Insider Labor | 9,900 | 6,600 | 6,600 | 6,600 | 6,600 | 6,800 | 6,800 | 10,200 | 6,800 | 6,800 | 6,800 | 6,800 | 87,300 | 9.2% |
| | Insider Taxes | 900 | 600 | 600 | 600 | 600 | 600 | 600 | 900 | 600 | 600 | 600 | 600 | 7,800 | 0.8% |
| | Total COGS | 57,900 | 41,600 | 41,600 | 41,600 | 41,600 | 42,800 | 42,800 | 59,800 | 42,800 | 42,800 | 42,800 | 42,800 | 540,900 | 56.8% |
| | Gross Profit | 32,220 | 33,500 | 33,500 | 33,500 | 33,500 | 35,300 | 35,300 | 33,920 | 35,300 | 35,300 | 35,300 | 35,300 | 411,940 | 43.2% |
| **Sales** | | | | | | | | | | | | | | | |
| | Marketing & Advertising | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 | 12.6% |
| | Travel | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,200 | 0.8% |
| | Meals & Entertainment | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 | 0.5% |
| | Total Sales | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 11,000 | 132,000 | 13.9% |
| **Office** | | | | | | | | | | | | | | | |
| | Rent | 4,100 | 4,100 | 4,100 | 4,100 | 4,100 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 49,900 | 5.2% |
| | Utilities | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 | 1.3% |
| | Repairs | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 33,500 | 3.5% |
| | Total Office | 7,600 | 7,600 | 7,600 | 7,600 | 7,600 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 8,200 | 95,400 | 10.0% |
| **Admin** | | | | | | | | | | | | | | | |
| | Insurance | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 5,300 | 0.6% |
| | Waste Disposal | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 | 0.3% |
| | Bank Fees | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 | 0.6% |
| | Licenses & Permits | - | - | - | - | - | 1,400 | - | - | - | - | - | - | 1,400 | 0.1% |
| | Telephone and Internet | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 1,600 | 18,700 | 2.0% |
| | Postage | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 | 0.1% |
| | Legal & Professional | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 1,900 | 800 | 800 | 800 | 800 | 10,700 | 1.1% |
| | Office Supplies | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 8,400 | 0.9% |
| | Total Admin | 3,900 | 3,900 | 3,900 | 3,900 | 3,900 | 5,400 | 5,100 | 5,100 | 4,000 | 4,000 | 4,000 | 4,000 | 54,100 | 5.7% |
| | Net Profit | 9,720 | 10,000 | 10,000 | 10,000 | 10,000 | 10,700 | 8,000 | 9,620 | 12,100 | 12,100 | 12,100 | 12,100 | 130,440 | 13.7% |
| | | | | | | | | | | | | | | | |
| | Beginning Cash | 166,277 | 170,049 | 175,101 | 180,153 | 185,205 | 190,258 | 195,010 | 197,062 | 200,734 | 206,886 | 213,038 | 219,190 | (40,033) | |
| | Class 1- Bank United | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (3,336) | (40,033) | |
| | Class 2-Tax Collectors | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (82) | (982) | |
| | Class 3-IRS | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| | Class 6-Unsecured | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (2,530) | (30,360) | |
| | Administrative Expenses | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| | Net Profit | 9,720 | 11,000 | 11,000 | 11,000 | 11,000 | 10,700 | 8,000 | 9,620 | 12,100 | 12,100 | 12,100 | 12,100 | 130,440 | |
| | Ending Cash | 170,049 | 175,101 | 180,153 | 185,205 | 190,258 | 195,010 | 197,062 | 200,734 | 206,886 | 213,038 | 219,190 | 225,342 | | |
| | | | | | | | | | | | | | | | |
| | Change in cash | 3,772 | 5,052 | 5,052 | 5,052 | 5,052 | 4,752 | 2,052 | 3,672 | 6,152 | 6,152 | 6,152 | 6,152 | | |

**The Debtor will utilize the accumulated cash balance to satisfy its plan obligations or to obtain financing in whole or in part to satisfy its plan obligations.